[Civ. No. 16830. First Dist., Div. One. Aug. 31, 1956.]

ARNE RASMUS, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Leo Fried and George Olshausen for Appellant.

Roger G. Eliassen and Ricksen, Freeman, Hogan & Vendt for Respondents.

BRAY, J.—In this action for personal injuries brought against defendant Southern Pacific Company, a corporation, under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) and against Circosta individually and doing business as the Circosta Iron and Metal Company, the trial court granted a nonsuit in favor of defendant Southern Pacific and the jury granted a verdict in favor of Circosta. Plaintiff appeals from the judgments entered thereon.

## QUESTIONS PRESENTED

1. As against Southern Pacific—was there substantial evidence of its negligence to go to the jury?

2. As against Circosta—

(a) Withdrawal of res ipsa loquitur issue.

(b) Was contributory negligence an issue?

(c) Instructions on relative duty of care of plaintiff and Circosta.

(d) Propriety and correctness of court's instruction in absence of parties.

## EVIDENCE

Plaintiff was employed by Southern Pacific as an inspector of freight cars. His foreman was McTiernan who customarily

gave the inspectors the numbers of the cars they were to inspect. It was then the duty of the inspectors to go to the yards of the different shippers which had loaded and leveled cars, and inspect them. The leveling process consisted of throwing out any scrap metal which was more than 5 feet long or which protruded over the edges of the cars. The inspectors usually came to the yard about 4, at which time the cars were usually ready. However, there was testimony that the cars on occasion were leveled between 4 and 4:30 p. m.

The day of the accident, Doris McLaughlin at the Southern Pacific dispatching office had received an order from Davis, a Southern Pacific employee who customarily gave such information, that two Southern Pacific cars would be ready for inspection in the Circosta yard at 4 p. m. Doris informed McTiernan about 3:35 p. m. that the cars were ready for inspection there. McTiernan and plaintiff then drove to that yard, arriving shortly after 4. Their presence was not made known at the Circosta office. The cars plaintiff was to inspect were located about 200 feet from the office. On the near side of the track was a road, on the other side of the cars were the scrap metal piles. As plaintiff approached the cars he assumed that they were loaded and leveled. There was nothing sticking over. While he was turning around the end of a car to inspect the other side, he noticed a man in the car. Plaintiff could not see what he was doing. Plaintiff only saw the upper part of his body and it seemed like he was looking down at the load. Plaintiff did not notify him of his presence. When plaintiff was about through inspecting the first car and was between the two cars getting ready to inspect the second, he was hit on the head with a piece of pipe thrown from the car by the Circosta employee in it who was leveling the load. This person had not been cautioned to be careful in throwing material from the car as inspectors might be about and did not know of plaintiff's presence. The employee gave no warning nor did he look in the direction he was throwing the pipe. Plaintiff was severely injured by the pipe.

Rasmus sued Southern Pacific Company under the Federal Employers' Liability Act. At the end of Rasmus' case, Southern Pacific's motion for nonsuit was granted. The action against Circosta, which was brought under the ordinary law of negligence, proceeded to a verdict and judgment for this defendant. Plaintiff's motion for new trial was

denied by operation of law through the court's failure to act upon it. Plaintiff appeals from the judgments.

1. *Southern Pacific Appeal*—Nonsuit.

Was there any evidence of negligence of Southern Pacific? ■ Under the Federal Employers' Liability Act the injured employee, in order to recover damages for injuries received in the scope of his employment, must prove negligence of the employer. (*Blunk* v. *Atchison, T. & S. F. Ry. Co.*, 97 Cal. App.2d 229, 234 [217 P.2d 494].) ■ Contributory negligence is not a defense, but must be considered by the jury in reduction of damages. (45 U.S.C.A. § 53.) ■ Assumption of risk has been abolished. (45 U.S.C.A. § 54.) ■ The duty of this court in passing upon an order granting a nonsuit in a Federal Employers' Liability Act case is. the same as in cases under the state law of California, namely, the evidence must be construed most favorably to plaintiff (*Lavender* v. *Kurn*, 327 U.S. 645, 652 [66 S.Ct. 740, 90 L.Ed. 916]) and if fair-minded persons could reach different conclusions on the same evidence, the issue is for the jury even where the evidence is not controverted. (*Bailey* v. *Central Vermont Ry.*, 319 U.S. 350, 353 [63 S.Ct. 1062, 87 L.Ed. 1444] ; *Carpenter* v. *Atchison, T. & S. F. Ry. Co.*, 109 Cal. App.2d 18, 23 [240 P.2d 5].)

■ Here there was evidence that the employer informed the employee that the cars were ready for inspection, that with his foreman plaintiff went to inspect the cars, that it was customary for the foreman not to check at the Circosta office to determine that the cars actually were ready for inspection, nor to check the cars themselves to see if the loading and leveling had ceased. There was evidence to the effect that work in loading cars customarily continued after 4 o'clock, the time when inspection of the cars customarily started. ■ The rule in cases of this kind is that the employer whose duty it is to provide his employee with a safe place to work, ordinarily is not liable for injuries to his employee on premises of a third party over which the employer has no control. The rule, however, is subject to the well recognized exception that if the employer knows, or should have known, that the third party's premises are dangerous, the employer may be liable for the employee's injuries there. (See *Ericksen* v. *Southern Pac. Co.*, 39 Cal.2d 374, 380 [246 P.2d 642].)

"As was said in *Beattie* v. *Elgin, Joliet & Eastern Ry. Co.*, 217 F.2d 863, 865, 866 : 'The fact that an employee is sent to

premises not belonging to or under the control of his employer does not absolve the employer from liability for injuries he may sustain because of their unsafe condition. . . . Inasmuch as plaintiff at the time of the accident was in a place where his assigned duties required him to be, defendant on the issue of negligence was chargeable with knowledge of the conditions which existed there from time to time which in the exercise of reasonable care it could have ascertained. . . .' " (*Van Horn* v. *Southern Pac. Co.,* 141 Cal.App.2d 528, 532 [297 P.2d 479].)

Whether the above facts, coupled with the fact that the information given plaintiff by his employer to the effect that the cars were ready for inspection was incorrect, constituted negligence by the employer, was a question for the jury. It cannot be said that as a matter of law the employer was not negligent.

Nor can we say as a matter of law that the fact that plaintiff saw a man standing in the car and failed to realize that the man might throw material out of the car made that fact the sole proximate cause of the accident. As said in *Ericksen* v. *Southern Pac. Co., supra,* 39 Cal.2d at pages 379-380: "The plaintiff's knowledge of the unsafe nature of the premises does not relieve the defendant of liability. Since 1939 the defense of assumption of risk has been barred under the act. (45 U.S.C.A. § 54.) No subsequent decision has been cited which as a matter of law relieves an employer from liability for injuries due to dangers known to the employer simply because those dangers were also known to the employee." Whether a reasonable and prudent person would have concluded that the man's presence meant danger, and therefore the failure to so conclude was or was not the sole proximate cause of the accident, or whether it was or was not contributory negligence which, while not a defense, would serve to minimize the damages, were all matters for the jury. The nonsuit should not have been granted.

2. *Circosta Appeal.* (a) Res Ipsa Loquitur.*

Generally, three conditions are necessary to make the doctrine applicable. (See *John* v. *B. B. McGinnis Co., Inc.,*

---

*Plaintiff offered no instructions on the subject. Ordinarily this would preclude our consideration of the failure to give an instruction upon it. However, the court instructed that the fact of the happening of the accident does not support an inference of negligence and also that negligence is never presumed, and that the jury would not be justified in inferring that defendant was negligent as the accident might have

37 Cal.App.2d 176, 179 [99 P.2d 323].) (1) The injury must be caused by an instrumentality under the exclusive control of the defendant. This condition existed. (2) The accident must be of a type which ordinarily does not happen unless someone is negligent. It was for the jury to determine whether this requirement was met. It could have found that this condition existed. Defendant's main answer to this is that it was the custom for its men to throw pipe and metal off cars. ██ But the prevailing custom within a company or an industry does not necessarily determine that the customary activity measures up to the degree of care required by the law. If it was Circosta's custom to throw metal off the cars without ascertaining that no one was in a position to be hit, particularly during the period when Circosta knew that the Southern Pacific employees were accustomed to inspect, a jury could find that this fact would not only not measure up to the standard of care required but also that the accident would not have occurred had there been no negligence. ██ (3) The accident must not have been due to any voluntary act or contributing fault on the part of the plaintiff. As pointed out before, whether that situation existed was one for the jury to determine. (See *Baker* v. *B. F. Goodrich Co.*, 115 Cal.App.2d 221 [252 P.2d 24].)

██ The fact that plaintiff proved the specific acts of negligence causing the injury does not preclude the application of the doctrine. "If, because of the circumstances of the case and the probabilities, an inference of negligence is raised, the doctrine should be applied, it is difficult to see why its application should be denied merely because plaintiff proves specific acts of negligence. There is no reason why such proof should wholly dispel the inference any more than it would in any other case. The plaintiff is penalized for going forward and making as specific a case of negligence as possible. If he endeavors to make such a case he runs the risk of losing the benefits of the doctrine to which the circumstances entitle him. Rather than place him in such a position he should be

occurred without any fault of defendant. In *Jensen* v. *Minard*, 44 Cal.2d 325 [282 P.2d 7], the court held it to be prejudicial error in a case involving res ipsa loquitur to give an instruction of the type given here even though no instructions on the res ipsa loquitur doctrine were asked. Therefore, here we are required to determine whether the doctrine applies. "Even though instructions on the doctrine of res ipsa loquitur were not requested, the jury should not have been foreclosed from considering the evidence provided by the happening of the accident itself in determining whether defendant was negligent." (*Jensen* v. *Minard, supra,* at p. 329.)

encouraged to prove as much as possible. The end result is not injurious to the defendant. He is not injured by the fact that the inference of negligence arose. The circumstances established a foundation therefor based upon probability. Indeed, he is in a better position as he has specific evidence to meet before the trier of fact that may be helpful to him. The case goes to the trier of fact with the general inference of negligence, plus other evidence of specific acts of negligence, to be weighed against defendant's showing. There is no reason for applying a different test for determining when the inference is wholly dispelled as a matter of law in a case where res ipsa loquitur is applicable, than is used in the case of any other inference.'' (*Leet* v. *Union Pac. R. R. Co.,* 25 Cal.2d 605, 621-622 [155 P.2d 42, 158 A.L.R. 1008]; see also *Doke* v. *Pacific Crane & Rigging, Inc.,* 80 Cal.App.2d 601, 609 [182 P.2d 284].)

In the following cases the doctrine was held applicable: *Robbins* v. *Henry Cowell Lime etc. Co.,* 7 Cal.App.2d 646 [46 P.2d 781], the plaintiff was struck by a cement sack being thrown down a chute; *Cooper* v. *Quandt,* 105 Cal.App. 506 [288 P. 79], employee of one building contractor was struck by a plank dropped by an employee of another contractor working on the building; *Doke* v. *Pacific Crane & Rigging, Inc., supra,* 80 Cal.App.2d 601, employee of industrial plant killed by the falling of an appliance while assisting appliance company's employees in installing the appliance at the plant.

The trial court erred prejudicially in giving the above mentioned instructions in this case where under proper instructions the doctrine of res ipsa loquitur could have been applied by the jury.

(b) Contributory Negligence.

Unlike the situation as to the Southern Pacific Company, contributory negligence could be a defense in favor of Circosta. The court properly instructed on it. The fact that a crane lifting metal was working near the cars, the fact that plaintiff saw a man in the car looking downward, were circumstances which the jury, although not compelled to so find, could have found would cause a prudent person to determine that the leveling of the metal in the car had not been concluded, and that hence there was danger of being struck, and that plaintiff was guilty of contributory negligence in not ascertaining what the man was doing in the car.

### (c) Relative Duties of Care.

The court instructed that defendant was not required to use any greater degree or amount of care than plaintiff was required to use. Plaintiff contends that this is contrary to the holding in *Dixon* v. *Pluns*, 98 Cal. 384 [33 P. 268, 35 Am.St.Rep. 180, 20 L.R.A. 698]. There the court said that one engaged with tools and materials directly over a public sidewalk was required to use more than ordinary care to prevent them from falling on pedestrians lawfully using the sidewalk. Such rule would not apply here where no public sidewalk was involved. Defendant's duty was only to use ordinary care. We see no impropriety in the instruction.

### (d) Instruction in Absence of Parties.

Inasmuch as the case will have to be retried because of the court's failure to instruct on res ipsa loquitur, and obviously no such occurrence will be repeated, we deem it unnecessary to discuss this assignment of error.

Both judgments are reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.