**SOUTHERN ARIZONA YORK REFRIGERATION COMPANY, a corporation and Arizona York Refrigeration Company, a corporation, Appellants,**

v.

**The BUSH MANUFACTURING COMPANY, a corporation, now known as Dunham & Bush Manufacturing Company, Appellee.**

**No. 19877.**

United States Court of Appeals
Ninth Circuit.

April 22, 1966.

Rehearing Denied June 9, 1966.

John W. Moran, Los Angeles, Cal., for appellants.

Tremaine & Shenk, Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and KOELSCH, Circuit Judges.

JERTBERG, Circuit Judge:

Before us is a second appeal in an action filed by appellants [plaintiffs in the District Court], against appellee [defendant in the District Court] to recover indemnification in the sum of $14,235.41 paid out by the plaintiffs by reason of alleged negligent manufacture and/or design of certain refrigeration coils manufactured and designed by defendants and furnished to plaintiffs in the construction by them of a building for Swift and Company at Tucson, Arizona. Our decision in the first appeal is reported at Southern Arizona York Refrigeration Co. v. Bush Mfg. Co., 331 F.2d 1 (9th Cir., 1964). Related litigation in which plaintiffs and Swift and Company were involved appears in Authorized Supply Company of Arizona v. Swift & Company, 271 F.2d 242 (9th Cir., 1960), and Rehearing in 277 F.2d 710 (9th Cir. 1960). For more of the background of prior litigation than appears in this opinion the interested reader is referred to the cases cited above.

The facts leading up to the institution of the present action are fully set forth in 331 F.2d 1, to which reference is hereby made, and will not be repeated at length in this opinion. Suffice it to say:

The action instituted by Swift and Company alleged negligence and breach of express and implied warranties and sought damages resulting therefrom. The negligence count was dropped on the trial and the cause proceeded wholly on the theory of breach of warranty. The District Court concluded that under the contract between Swift and Company, plaintiffs

"expressly warranted to Swift and Company that the refrigeration system was constructed of durable, sound materials and that said system was fit and suitable to safely and efficiently refrigerate and freeze meat products stored in said plant, and that the defects in the refrigeration coils which caused the escape of ammonia and gas constituted a breach of such warranties."

Plaintiffs were found liable to Swift and Company for damage to the meat contained in this storage area in the amount of $9,175.29, which liability was sustained by this court in 277 F.2d 710.

On July 29, 1960, plaintiffs paid in full said judgment and also paid in the course of the defense of said lawsuit and appeals relating thereto, attorney's fees and costs in the amount of $5,060.12.

Thereafter plaintiffs instituted the present action against the defendant for indemnification, alleging that the refrigeration coils furnished by the defendant and installed in the Swift and Company building by plaintiffs,

"were negligently, carelessly and defectively manufactured and/or designed by defendant, and that as a direct and proximate result thereof, subsequent to the installation of said coils, and on or about December 5, 1955, one of the coils developed a leak which permitted ammonia gas to escape in the Swift and Company storage area and as a direct and proximate result thereof meat and other products were damaged * * *."

At the trial of the action in the District Court, evidence was offered by plaintiffs in the form of testimony contained in depositions of Leland Gideon, Service Manager of Arizona York Refrigeration Company, one of the plaintiffs; Charles Sayers, Foreman in charge of installation of equipment for plaintiffs; Maurice D. Gerhart, an independent refrigerator serviceman; Allen Decker, Vice-President of defendant in charge of Engineering [under § 43 (b), Federal Rules of Civil Procedure]; Oliver Butler, West Coast Representative of defendant at the time of the original installation [under the same section]; and Dino Morelli who was the only live witness called by the plaintiffs, a Professor of Engineering and who testified as an expert. In addition there was received in evidence itemized statements of the legal services rendered to the plaintiffs in the prior litigation, photographs of refrigeration equipment, catalogs issued by the defendant and installation instructions issued by the defendant.

At the conclusion of the plaintiffs' case, the District Court granted defendant's motion, made under Rule 41(b) Federal Rules of Civil Procedure, and ordered the action dismissed with prejudice.

Plaintiffs appealed to this Court from the order of the District Court specifying *inter alia* that in the facts and circumstances of the case the District Court erred in failing to apply the *res ipsa loquitur* doctrine which, *if* applied, "placed the burden on defendant of at least offering evidence to overcome the inference of negligence raised by the stipulated facts and plaintiffs' evidence."

In 331 F.2d 1, we held as a matter of law that the *res ipsa loquitur* doctrine was applicable in that the evidence produced by plaintiffs was sufficient to raise the inference of negligence in the manufacture and/or design of the coils and place the burden on the defendant of offering evidence sufficient to at least rebut such inference. Such holding is the law in this case. We reversed the judgment of dismissal appealed from, and remanded the cause to the District Court for further proceedings not inconsistent with the views expressed in our opinion.

On remand the defendant produced two witnesses who offered testimony. These witnesses were Allen Decker, Vice-President of defendant in charge of Engineering, and Oliver Butler, West Coast Representative of defendant at the time of the original installation, both of whom at the first trial having been called by the plaintiffs under Rule 43(b) Federal Rules of Civil Procedure.

Following the second trial, judgment was entered in favor of the defendant. The findings of fact of the District Court consist of the history of the prior litigation between the appellants and Swift and Company, all of which appears in 331 F.2d 1, supra, and the following paragraphs which are the only findings of fact made and entered by the District Court which are pertinent on this appeal. These findings of fact are:

"XIX

"That the refrigeration coils involved in this lawsuit were designed and manufactured in accordance with the prevailing standards and custom of the trade.

"XX

"That plaintiff knew that said coils had leaked at three specific times and at least one to two months before December 3rd and 4th, 1955.

*"IT IS NOT TRUE:*

"I

"That defendant negligently manufactured and/or designed the refrigeration coils installed in Swift and Company's plant in Tucson, Arizona.

"II

"That any damage to plaintiffs was the proximate result of the alleged negligent manufacture and/or design of said coils."

From the foregoing facts the District Court concluded that Federal jurisdiction

was properly invoked upon the ground of diversity of citizenship, and

### "III

"That defendant was not negligent in the design and/or manufacture of the refrigeration coils which are the subject of this lawsuit.

### "IV

"That defendant is not liable to plaintiff under the law of indemnity in the sum of $14,135.41, or at all.

### "V

"That defendant should have judgment against plaintiffs with its costs."

Judgment was accordingly entered in favor of the defendant.

Our holding in 331 F.2d 1, supra, does not mean that the burden placed by law on the plaintiffs to establish by a preponderance of the evidence that negligence on the part of the defendant in the design and/or manufacture of the coils shifted the ultimate burden of proof from the plaintiffs to the defendant. Our holding simply means that the defendant has the burden of going forward with the evidence, that is, the burden of producing sufficient evidence to meet the inference of negligence by offsetting or balancing it. Hardin v. San Jose City Lines, Inc., 41 Cal.2d 432, 260 P.2d 63 (1953); Burr v. Sherwin Williams Company, 42 Cal.2d 682, 268 P.2d 1041 (1954); Pickwick Stages Corp., et al. v. Messinger, 44 Ariz. 174, 36 P.2d 168. The showing which the defendant is required to make is an explanation of its conduct, and to be complete it must be as broad as the inference.

Thus, if at the second trial the evidence produced by the defendant was sufficient to meet the inference of negligence by offsetting or balancing it, plaintiffs failed to sustain the burden placed upon them, and judgment was properly entered in favor of defendant.

Our examination of the record in both trials reveals the following facts are not in dispute: The coils in question were designed and supplied by the defendant. Leaks in the coils developed which were repaired under the direction of the defendant and at its cost. Other leaks developed which permitted gas to escape and cause damage to the stored meat. Such leaks do not ordinarily occur if due care is exercised in the design and/or manufacture of the coils. The defendant replaced said coils with new coils of an improved design which thereafter performed satisfactorily. The original coils were returned to the defendant and scrapped, apparently without examination or inspection.

We have carefully examined the evidence produced by defendant at the second trial and find no evidence in the record to support the finding of fact that the refrigeration coils in question were designed and/or manufactured in accordance with "the prevailing standards and custom of the trade." The most that can be said is that the evidence produced by defendant showed that the defendant designed the coils in accordance with its standards and custom and that the coils so designed were manufactured by two manufacturing companies which were reputable and had been long engaged in the manufacturing business.

In addition to our view that such finding is without evidentiary support, we must assume from such finding that the District Court is of the view that the standard of care required of the defendant in the design and/or manufacture of the refrigeration coils was "the prevailing standards and custom of the trade." That such is not the law is recognized by appellee in the statement appearing on page 20 of its brief:

"The appellee recognizes that a custom of the trade may not meet the standard required by the law to prevent negligence, and the defendant will be held responsible for injuries which result from such activities."

In support of appellee's statement see Atchison, Topeka and Santa Fe R. R. v. Parr (1964), 96 Ariz. 13, 391 P.2d 575, 578; Phoenix Assurance Company, etc. v. Texas Holding Company (1927), 81

Cal.App. 61, 252 P. 1082; Rasmus v. Southern Pacific Company (1956), 144 Cal.App.2d 264, 301 P.2d 23.

██ We are unable to understand the intent or purpose of the District Court in the finding of fact:

"That plaintiff knew that said coils had leaked at three specific times and at least one to two months before December 3rd and 4th, 1955.",

unless it was to imply the existence of some act or contributory fault on the part of the plaintiffs which caused or contributed to the damage of the stored meat. If such be the intent or purpose, we must say the record reveals no voluntary act or contributory fault on the part of plaintiffs which in any way caused or contributed to the leaks in the refrigeration coils. Such finding is also without evidentiary support.

While we recognize that the District Court found both as a finding of fact and as a conclusion of law that the defendant did not negligently manufacture and/or design the refrigeration coils, and concluded that any damage to plaintiffs was not the result of the alleged negligent manufacture and/or design of said coils, we must assume that such findings and conclusions are predicated on either or both of the two findings of fact which are lacking in evidentiary support.

██ We recognize that we must view the record in the light most favorable to sustain the judgment and that findings of fact of the District Court must be sustained by us unless "clearly erroneous." Notwithstanding such admonitions, our review of the record convinces us that the evidence produced by defendant at the second trial is insufficient to meet the burden which the application of the *res ipsa loquitur* doctrine placed upon the defendant.

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Company, 333 U.S. 364,

at 395, 68 S.Ct. 525, at 542, 92 L.Ed. 746 (1948); United States v. Munz, 352 F.2d 196 (9th Cir. 1965).

We entertain a definite and firm conviction that a mistake was committed in this case.

The judgment appealed from is reversed and the cause is remanded to the District Court for reconsideration and redetermination in light of the record in both trials, and consistent with the views expressed in this opinion, and for the making of new findings of fact, conclusions of law, and judgment.