[Civ. No. 19972.   First Dist., Div. Three.   May 28, 1962.]

LULA BRUBAKER, Plaintiff and Respondent, v. PACIFIC TURF CLUB, Defendant and Appellant.

Woodrow W. Kitchel and D. W. Brobst for Defendant and Appellant.

Haley, McInerney & Logan, J. Fred Haley and Richard G. Logan for Plaintiff and Respondent.

DEVINE, J.—Plaintiff was awarded a verdict by a jury in amount $17,500 because of injuries she sustained in a fall at Golden Gate Fields, a horse-racing track in Albany, Alameda County. Judgment was entered on the verdict and motions for judgment notwithstanding the verdict and for new trial were denied. Appellant, operator of the race track, appeals from the judgment.

Plaintiff, a 72-year-old woman, paid her way into the track, with a woman companion, a Mrs. Farmer. She seated herself on the mezzanine floor, because of Mrs. Farmer's wishes, an area which plaintiff had not previously visited, although she had been in other parts of the grounds on a few earlier visits. Mrs. Farmer absented herself from time to time in order to give financial backing to her convictions on prospective racing results. Meanwhile, plaintiff experienced an increasing need for visiting a restroom, and looked about unsuccessfully for an attendant who might assist or direct her. She observed rubbish such as parts of sandwiches and paper on the floor, and she was afraid to leave her seat, until the demands of nature became so urgent that she was obliged to do so. People were milling about in the passageway, no race being then under way, so she had to walk near a hamburger stand. On the floor, there was foodstuff or vomitus, which she could not identify, in some three separate positions, and she tried to avoid them, but her foot came down on one of these, or on a fourth bit which was in the vicinity, and she slipped, fell, and fractured her hip. She testified, without objection, that just before she fell she had heard a man say that he had almost fallen.

Mrs. Farmer, who was at other parts of the track at the time of the fall, testified that on the floor about the area of the accident there was litter and refuse, although it does not appear just how long before plaintiff's fall this was. Both plaintiff and Mrs. Farmer testified that plaintiff was wearing flat heel shoes.

The defense produced two witnesses. The first was a janitor foreman, who testified to the practices of maintenance on the deck where plaintiff fell, but who had no knowledge of his

own of the accident or of the condition of the floor at the time. He testified that the deck is swept with large brooms while the races are on and most people are watching, not walking, and that in the intervals, while people are eating at the hamburger or hot dog stands, two pick-up men go about with little pans and brooms getting up everything they can. There are garbage cans, into which all manner of debris removed from the deck is deposited, but the cans fill up, and the men then push the garbage down and try to get more in them, and when they are filled to capacity, they try to get an empty can from some other place. He testified that he had not heard of anyone's falling on debris except plaintiff in the 10 years he has been at the track, but changed this on being cross-examined with the use of his deposition, to say that he had heard of persons who fell, but not of anyone who had been hurt.

The other witness, a security guard, testified that he saw plaintiff lying on the concrete floor near the hamburger stand; that about five minutes after the fall, he searched the area for skid marks and the like, and found none, and that a general litter of paper was the only debris he saw; that the pick-up men, between races, would sweep up the "major things" such as a broken water glass or, he thought, a sandwich remnant, and that he himself, if he saw a hot dog on the deck, would kick it out of the way or have somebody sweep it up, but that no attempt was made to keep the deck clear of paper; that they kept a "cardboard box or something" for debris, and that they "usually kept it cleaned up fairly well."

Neither of the pick-up men who were on duty was called by defendant. No explanation was offered for the absence of one of them, and the janitor foreman testified that he had made no attempt to locate this man. The other was in a hospital, and at the time plaintiff, rather than defendant, sought a continuance in order to take his deposition. (The continuance was denied because application was not timely made.)

Appellant makes the points that there was not sufficient evidence of negligence to support the verdict, in that plaintiff's testimony is inherently incredible and that there is no showing of the length of time that the debris had been on the floor, that plaintiff was guilty of contributory negligence as a matter of law, and that as a matter of law she assumed the risk of walking where she did.

We find nothing inherently incredible or improba-

ble in plaintiff's testimony. As to the duration of the presence of the refuse, of course, plaintiff cannot tell how long the particular debris on which she slipped was on the deck, but she did testify as to the continual presence of rubbish and leavings. The precise item was unidentified as having been long present, in cases in which plaintiffs' verdicts have been sustained. (*Goldsmith* v. *Mills,* 130 Cal.App.2d 493 [279 P.2d 51] ; *Dillon* v. *Wallace,* 148 Cal.App.2d 447 [306 P.2d 1044].) Admittedly, paper simply remained on the deck between races, and although there was testimony that the maintenance men would try to pick up "major things" and foodstuff, the testimony is readily susceptible of the inference, which the jury probably drew, that the effort did not measure up to the standard of ordinary care under all of the circumstances, and the defense gave no assistance to its cause by its failure to produce, by actual presence or by deposition, either of the men whose immediate duty was maintenance of the place where the accident occurred.

■ We cannot agree with appellant that contributory negligence was shown as a matter of law by the facts that plaintiff walked on the deck knowing of the danger, and that she failed to avoid contact with the substance which caused her to fall, because this conclusion would result only if reasonable men could draw but one inference, namely, one that points unerringly to the negligence of plaintiff contributing to the injury. (*Frazier* v. *Yor-Way Market, Inc.,* 185 Cal. App.2d 390, 398 [8 Cal.Rptr. 335] ; *Shaw* v. *Colonial Room,* 175 Cal.App.2d 845, 849 [1 Cal.Rptr. 28].)

■ We reject, too, the proposition that assumption of risk was established as a matter of law in walking in a place which plaintiff knew was hazardous. The case is similar to that of *Shaw* v. *Colonial Room, supra,* wherein the need for relieving one's self was held to be a circumstance for the consideration of the jury as to the defense of contributory negligence. It is a circumstance likewise to be considered in respect of the element of voluntariness which is essential to the defense of assumption of risk.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.